**UNITED STATES of America,**
**Appellee,**

v.

**Vitautus KILTINIVICHIOUS,**
**Defendant–Appellee.**

No. 06–0921–cr.

United States Court of Appeals, Second Circuit.

Dec. 28, 2006.

&#x2015;996

Eileen F. Shapiro, Brooklyn, New York, for Defendant–Appellant.

Jonathan S. Kolodner, Assistant United States Attorney (Katherine Polk Failla, Assistant United States Attorney, on the brief), for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, New York, for Appellee.

**120**

PRESENT: Hon. SONIA SOTOMAYOR, Hon. B.D. PARKER, Circuit Judges, Hon. MARK R. KRAVITZ, District Judge.[1]

## SUMMARY ORDER

Defendant-appellant Vitautus Kiltinivichious appeals from a February 10, 2006 order of the United States District Court for the Southern District of New York (Wood, C.J.), declining to resentence him following remand from this Court pursuant to *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005). *See United States v. Kiltinivichious,* 132 Fed.Appx. 901 (2d Cir. 2005). We assume the parties' familiarity with the underlying facts and procedural history.

■ Kiltinivichious challenges the district court's imposition of a four-level sentencing enhancement for extortion involving serious bodily injury, *see* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 2B3.2(b)(4)(B) (2005), based on the assault of Edouard Simikian by members of the criminal organization known as "the Brigade." His principal assertion is that the assault, in which Simikian's jaw was broken, did not constitute "relevant conduct" for which he should receive an enhanced sentence under U.S.S.G. § 1B1.3. *United States v. Mulder,* 273 F.3d 91, 118 (2d Cir.2001).

■ First, Kiltinivichious claims that the assault was outside the scope of the criminal activity to which he agreed because it was unrelated to his conspiracy with the Brigade to extort drivers transporting Russian dancers. To determine the scope of the criminal activity agreement, we consider, among other factors, whether the defendant assisted in design-

ing and executing the scheme. *United States v. Studley,* 47 F.3d 569, 575 (2d Cir.1995). Kiltinivichious does not contest the district court's finding that he was actively involved in the planning and execution of the extortion scheme, particularly by arranging and participating in meetings during which members of the Brigade threatened drivers, and on at least one occasion by facilitating those threats by translating them for a driver. As the district court noted, Simikian, a driver whom the Brigade extorted, testified that he had failed to make all of his extortion payments before leaving New York for Florida. He also testified that members of the Brigade pursued him in Florida and assaulted him because he had stopped working as a driver and making payments. The Brigade's assault on Simikian was like the rest of the Brigade's extortion assaults on drivers, and thus within the scope of the extortionate scheme with which Kiltinivichious was involved.

■ Kiltinivichious additionally argues that the assault was outside the scope of the activity he agreed to because, at the time of the assault, he was no longer involved with the conspiracy. Although Kiltinivichious asserts that the dancer-transportation agency that he helped the Brigade to establish, Bella Donna, had ceased operating by the time of the Simikian assault in February 1998, the district court found that the extortion of Bella Donna's former business rivals continued beyond the time the business had formally stopped operating. Moreover, the district court found that Kiltinivichious's testimony that he had withdrawn from the conspiracy by this time was not credible, a conclusion to which we afford "strong deference." *United States v. Johnson,*

1. The Honorable Mark R. Kravitz, United States District Court for the District of Connecticut, sitting by designation.

378 F.3d 230, 239 (2d Cir.2004). Because Kiltinivichious bears the burden of proving that the assault is outside the scope of the agreement, *see United States v. Martinez–Rios,* 143 F.3d 662, 677 (2d Cir. 1998), and he offered only his own testimony in support of his claim to have withdrawn, the district court did not err in finding that he continued to be involved with the conspiracy when Simikian was assaulted.

◼ Second, Kiltinivichious further asserts that the Simikian assault was not relevant conduct because he could not have foreseen either that the Brigade would assault Simikian after Bella Donna stopped operating or that Samvel Bozaunts, a member of the Brigade, would lose his temper and break Simikian's jaw during the assault. As we have explained, Kiltinivichious's contention that the conspiracy had ended by the time of the assault is contrary to the district court's finding, which is not clearly erroneous. Moreover, the district court did not err in finding that the assault was foreseeable given the nature of the extortion scheme and the Brigade's past violent conduct in furtherance of the scheme. Kiltinivichious does not contest the district court's finding that he was present when members of the Brigade threatened and assaulted drivers for dancer-transportation agencies. Although knowledge that other conspirators used violence in different circumstances is an insufficient basis for a finding of foreseeability, *Mulder,* 273 F.3d at 119, here Kiltinivichious was aware specifically of the Brigade's use of violence against drivers like Simikian in the course of extorting them. It was thus foreseeable that the Brigade would assault Simikian for his failure to make all of his extortion payments. Whether Kiltinivichious could have foreseen that Bozaunts would lose his temper and injure Simikian more severely than

intended is irrelevant, given that it concerns only the severity of Simikian's injury and not whether Kiltinivichious could foresee that Bozaunts and other members of the Brigade would threaten or assault Simikian as part of the extortion scheme.

Kiltinivichious additionally contends that the district court erred by holding that it would have imposed the same sentence even if it did not apply the enhancement for serious bodily injury based on the Simikian assault. Because we conclude that the district court properly applied the serious-bodily-injury enhancement, we do not reach Kiltinivichious's argument that the district court's alternative position was erroneous.

◼ Kiltinivichious next challenges the district court's application of a four-level sentencing enhancement for abduction based on the incident in which Arthur Lembirskiy, another driver, was attacked by Brigade members in the parking lot of a New Jersey bar. According to Lembirskiy's testimony, which the district court found credible, members of the Brigade struck him, pushed him to the floor of his bus, and drove the bus "to a dark place near that bar," where they took his keys and told him to stop working as a driver. Kiltinivichious contends that the record does not provide sufficient information regarding this incident to support the abduction enhancement. Section 2B3.2(b)(5)(A) of the Guidelines provides for an enhancement for extortion offenses when "any person was abducted to facilitate commission of the offense." The commentary to the Guidelines defines "abduction" to mean that "a victim was forced to accompany an offender to a different location," and offers as an example "a bank robber's forcing a bank teller from a bank into a getaway car." U.S.S.G. § 1B1.1, cmt. n. 1(A). Lembirskiy's attackers moved him to a darker part of the parking lot, a "different

location," in order to "facilitate the commission of the offense," in that the movement was part of the assault, assisted them in threatening Lembirskiy without being observed, and added to the menace of their threats and violence.

■ Finally, Kiltinivichious argues that the district court erred by failing to consider several factors relevant to his sentence before declining to resentence him: his status as a deportable alien, his psychiatric history, and the disparity between the length of his sentence and those of his coconspirators. In declining to resentence Kiltinivichious, the district court explicitly addressed, and rejected, his arguments regarding his immigration status and the disparate length of his sentence. Even if the district court did not reiterate all of the potential negative effects of Kiltinivichious's deportation that were enumerated in his written submissions, we "presume, in the absence of record evidence suggesting otherwise, that a sentencing judge has faithfully discharged her duty to consider the statutory factors .... and we will not conclude that a district judge shirked her obligation to consider the § 3553(a) factors simply because she did not discuss each one individually or did not expressly parse or address every argument relating to those factors that the defendant advanced." *United States v. Fernandez*, 443 F.3d 19, 30 (2d Cir.2006). For the same reason, we do not conclude that the district court "shirked [its] obligation" to consider the § 3553 factors even though it did not specifically address Kiltinivichious's psychiatric history at the resentencing hearing.

For the foregoing reasons, the judgment of the district court is AFFIRMED.